KERRCH et al. v. UNITED STATES.

(Circuit Court of Appeals, First Circuit. June 3, 1909.)

No. 772.

1. CRIMINAL LAW (§ 1080*)—PROCEEDINGS FOR TRANSFER OF CAUSE—CITATION.

The citation issued on a writ of error should give the proper names of all of the persons applying for the writ.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 1080.*]

2. CRIMINAL LAW (§ 1023*)—REVIEW BY APPELLATE COURT—MOTION TO QUASH INDICTMENT.

The rule applied that error will not lie to the overruling of a motion to quash an indictment on account of anything which may be raised by demurrer.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 1023.*]

3. INDICTMENT AND INFORMATION (§ 90*)—SUFFICIENCY OF ACCUSATION—CERTAINTY.

In an indictment against a bankrupt and others for conspiracy to conceal assets from his trustee in bankruptcy, an averment that a person named was "duly" appointed trustee is sufficient; the matter of appointment being an incidental matter only, and not a vital element of the crime.

[Ed. Note.—For other cases, see Indictment and Information, Dec. Dig. § 90.*]

4. CRIMINAL LAW (§ 395*)—EVIDENCE—MATTER OF PROCURING DOCUMENTS.

On the trial of an involuntary bankrupt for conspiracy to conceal property from his trustee, it was not error to admit in evidence, over defendant's objection and claim of privilege, his books of account which had been taken possession of by a receiver appointed by the bankruptcy court.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 877; Dec. Dig. § 395.*]

5. CRIMINAL LAW (§ 385*)—EVIDENCE—COURSE OF BUSINESS.

Testimony from witnesses in reference to "course of business" is admissible in criminal cases as well as in civil suits.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 385.*]

6. CRIMINAL LAW (§ 459*)—EVIDENCE—EXPERT TESTIMONY.

Evidence by a merchant, accustomed to the class of goods in question, to the effect that a certain invoice corresponded to the goods, is not tech-

nically expert testimony, but is admissible under the general rules admitting evidence of identification.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1048–1050; Dec. Dig. § 459.*]

In Error to the Circuit Court of the United States for the District of Massachusetts.

See, also, 171 Fed. 365.

James E. Cotter (Harvey H. Pratt and Charles F. Smith, on the brief), for plaintiffs in error.

Guy A. Ham, Sp. Asst. U. S. Atty., and Asa P. French, U. S. Atty.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

PUTNAM, Circuit Judge. Several persons, including Jacob Kerrch, the bankrupt, were indicted in the Circuit Court for conspiring to conceal from his trustee in bankruptcy sundry of his assets. The citation is defective in naming only Kerrch; whoever else joined in applying for the writ of error being covered by the expression "et al., defendants." This is irregular, as the citation is the most important paper with reference to taking out a writ of error or appeal. Referring, however, to the petition for the writ of error, it gives the names of all the persons who were sentenced.

The plaintiffs in error urge 25 errors, but we consider only such as were orally reassigned at bar.

There was no demurrer, but a motion to quash; and error was alleged in refusing the motion. It has been thoroughly stated and restated that error cannot lie to a refusal of a motion to quash an indictment on account of anything which may be raised by demurrer. Nevertheless, as has been again said and resaid, an appellate court may notice what errors might be assigned in arrest of judgment, so that we often notice errors appearing on the face of the record, brought to the attention of the court below by a motion to quash, if they are substantial. The only complaints against the indictment brought to our attention are that it fails to state what tribunal appointed the trustee named in it, or that the person appointed accepted the trusteeship, or gave bond, or ever qualified. The allegation is simply that the person named therein as trustee was "duly appointed trustee." These words, of course, cover in a popular sense everything necessary to complete the appointment.

It is true that, under some circumstances, and, indeed, under many circumstances, it is not sufficient to allege in a general way that a thing was "duly" done; but the details must be stated to such an extent that the court can judge whether what was done was in law "duly" done. This rule, however, would be too burdensome if applied to everything which is merely incidental, or which only leads up to the real substance of the offense. Therefore it is not ordinarily required, except as to what is really a vital element of the crime. Under the statute, the vital thing is that there was a trustee, although, as held by us in Alkon v. United States, 163 Fed. 810, it may be suffi-

cient to allege only that a trustee was in contemplation. It follows from this that it cannot be essential to allege any more than is alleged in the present case, so far as the appointment and qualification of the trustee are concerned. Many illustrations of this rule are to be found in Wharton's Precedents. One series closely analogous includes 632 and 633, relating to a conspiracy by prisoners to escape, where the only allegation is that they were "lawfully" confined and "lawfully" detained, without any details by which the court could ascertain whether they were indeed thus lawfully confined or lawfully detained. An indefinite number of precedents, including the ordinary indictment for larceny, alleging property in the person from whom the goods were stolen, without any allegation how the property was acquired, might be referred to. Indeed, the practical rule applicable hereto is such a general one that we need not follow this any further.

It might also be said that, as to a mere motion to quash, deficiencies of this class would be so far matters of form that at common law they would probably be held to be cured by a verdict. Hardesty v. United States (C. C. A.) 168 Fed. 25, 27, and cases there cited. But, independently of the manner in which the question was raised, we think, as we have said, that the general rule applies here which applies generally to allegations leading up to the essential elements of the crime charged; so that, according to the common practice in those respects, the indictment stands.

Next the plaintiffs in error urge that the trial court erred in admitting the books of account of the bankrupt, offered by the United States, because they had been obtained from the bankrupt by means of an involuntary judicial proceeding in bankruptcy. The record sufficiently shows that the trial court understood that reliance was placed on the constitutional guaranties given an alleged criminal, and on section 860 of the Revised Statutes (U. S. Comp. St. 1901, p. 661), and especially on the decision and opinion of this court in Johnson v. United States, 163 Fed. 30, 89 C. C. A. 508, 18 L. R. A. (N. S.) 1194, where the section of the Revised Statutes relied on is fully set out and discussed. The circumstances of that case, however, were unlike the circumstances here, because Johnson v. United States related to the introduction by the United States of the schedules in bankruptcy filed by Johnson.

It is not clear from the record what books were made use of; but the brief for the United States says they were the daybook, cashbooks and checkbooks kept by the bankrupt, and the entries therein. Kerrch was declared a bankrupt as the result of an involuntary petition, and on the filing of that petition Friedman was appointed receiver and took possession of the books. Section 70 of the bankruptcy statute of July 1, 1898 (Act July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 345]), vests in the trustee, when appointed, title to the bankrupt's "documents" relating to his property. By the first section of the same act the word "documents" is to be construed to include "any book or instrument in writing." Section 2 of the same act provides for the appointment of receivers to take charge "of the property of the bankrupt after the filing of the petition." It is clear the purpose of this provision cannot be effected, unless the receiver has all the power to take temporarily into his possession whatever will vest in the assignee when he

is appointed. But we need not pursue this, because we do not understand that it is maintained that the receiver might not, and did not, take possession of the books in question lawfully.

Such being the facts, the proposition of the plaintiffs in error in this particular is not within any case decided by this court, or any case that is authoritative for it. We can also add that it is fully covered by Adams v. New York, 192 U. S. 585, 24 Sup. Ct. 372, 48 L. Ed. 575, and by our opinion and decision in New York Central Railroad Company v. United States,.165 Fed. 833, 843, where Adams v. New York is applied, and where also the true construction and limitations applicable to Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746, are explained. We are unable to find any error so far as this proposition is concerned.

In connection with the handling by a steamboat line of certain goods alleged to have been purchased by the bankrupt, the general freight agent was called as a witness by the United States; and, it having appeared that he examined the records of the line in regard to the apparent transportation of the goods, he was shown a duplicate receipt for freight, and thereupon, under objection, testified from his knowledge of the general course of business of the office that, in accordance with that course of business, the goods in question arrived and were received by the bankrupt. This was objected to, and the objection was too general to lay the basis for an exception according to the ordinary rule. However, we are not obliged to leave the matter there, because the plaintiffs in error rest mainly on the constitutional guaranty that a person accused shall be confronted with the witnesses against him. This guaranty has nothing whatever to do with common-law rules of evidence admitting declarations, like those of a dying person, or entries on books, made by a deceased person, or with reference to the general course of business, so far as either are otherwise admissible. The record is not developed sufficiently, therefore, to show whether this evidence was admissible or not as pertaining to the general course of business, a class of testimony which, with reference to large manufacturing or financial establishments, or with reference to other large affairs, is sometimes pertinent, as we decided in Grünberg v. United States, 145 Fed. 81, 90, 76 C. C. A. 51 et seq., and as also succinctly explained by Greenleaf on Evidence, § 120.

The last proposition we have to consider is the objection made to the testimony of a man who was familiar with the class of goods involved here, and who, on being called to examine an invoice from merchants in New York to the bankrupt, testified that it corresponded with goods in question here. He was not asked to testify that it covered the same merchandise, but only as to the question of similarity. An attempt was made to assimilate this to the rules applicable to what is strictly known as expert testimony. There is no relation between the two, and the evidence was clearly of a kind which may be given by any person who has knowledge either,of a particular article or a particular class of articles.

The judgment of the Circuit Court is affirmed.