## WATLINGTON v. UNITED STATES.*

(Circuit Court of Appeals, Eighth Circuit. May 1, 1916.)

No. 4275.

1. JURY ⊚⇒131(15)—SELECTION—QUESTIONING OF VENIREMEN.

It is not an abuse of discretion of the court to refuse to allow counsel to ask the veniremen questions calculated to induce a misunderstanding.

[Ed. Note.—For other cases, see Jury, Cent. Dig. § 579; Dec. Dig. ⊚⇒131(15).]

2. CRIMINAL LAW ⊚⇒385—EVIDENCE—CUSTOM—MAILING OF LETTERS.

The mailing of letters may be shown by evidence of the custom and course of men's private offices and business.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 861, 865–868, 870, 878; Dec. Dig. ⊚⇒385.]

3. CRIMINAL LAW ⊚⇒323—PRESUMPTIONS—MAILS.

The mailing of a letter, postage prepaid, raises a presumption of receipt by the addressee.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 724, 726, 730–751; Dec. Dig. ⊚⇒323.]

4. CRIMINAL LAW ⊚⇒402(1)—SECONDARY EVIDENCE—COPIES OF LETTERS.

Proved copies of letters sent to accused, who was charged with using the mails to defraud, may be received in evidence, without otherwise accounting for the originals.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 887; Dec. Dig. ⊚⇒402(1).]

5. POST OFFICE ⊚⇒49—POSTAL OFFENSES—USE OF MAILS TO DEFRAUD.

Where accused was charged with using the mails in aid of a scheme to defraud in connection with disposing of the stock of a loan company, letters written by stockholders in the company seeking information regarding its affairs while the scheme of accused was in progress are admissible.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 84–86; Dec. Dig. ⊚⇒49.]

6. CRIMINAL LAW ⊚⇒444—EVIDENCE—IDENTIFICATION OF LETTERS.

Where accused was charged with using the mails with intent to defraud, a stenographer in his office may testify as to the significance of typewritten initials on the letters, and that they showed who dictated them and who took the dictation and transcribed the letters.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1028; Dec. Dig. ⊚⇒444.]

7. CRIMINAL LAW ⊚⇒830—TRIAL—INSTRUCTIONS.

Where a requested instruction was not in proper shape, and would have to be recast by the court, it may be denied for that reason.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2012, 2017; Dec. Dig. ⊚⇒830.]

8. POST OFFICE ⊚⇒35—OFFENSES—USE OF MAILS TO DEFRAUD.

Where, by organizing a corporation, accused intended ultimately to defraud stockholders, the legality of the corporation's object and charter purpose is no defense to prosecution for using the mails in connection with the scheme to defraud.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 55; Dec. Dig. ⊚⇒35.]

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied September 20, 1916.

9. POST OFFICE ⬅⇒35—OFFENSES—USE OF MAILS TO DEFRAUD.

> Where accused used the mails to dispose of corporate stock, and subsequently appropriated the property of the corporation, he is not guilty of using the mails with intent to defraud, unless there was a fraudulent intent at the time the mails were used.

> [Ed. Note.—For other cases, see Post Office, Cent. Dig. § 55; Dec. Dig. ⬅⇒35.]

In Error to the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

W. H. Watlington was convicted of using the mails in aid of a scheme to defraud, and he brings error. Affirmed.

Norman R. Haskell and Samuel W. Hayes, both of Oklahoma City, Okl. (E. G. McAdams and Lawrence Mills, both of Oklahoma City, Okl., and Carlos Bee, of San Antonio, Tex., on the brief), for plaintiff in error.

Isaac D. Taylor, Asst. U. S. Atty., of Guthrie, Okl. (John A. Fain, U. S. Atty., of Lawton, Okl., and W. B. Herod, Asst. U. S. Atty., of Guthrie, Okl., on the brief), for the United States.

Before HOOK, Circuit Judge, and AMIDON and VAN VALKENBURGH, District Judges.

HOOK, Circuit Judge. Watlington was convicted of using the mails in aid of a scheme to defraud. Section 215, Penal Code (Act March 4, 1909, c. 321, 35 Stat. 1130 [Comp. St. 1913, § 10385]). Briefly stated, the scheme set forth in the indictment was the organization of a mortgage loan corporation and the sale of stock thereof with intent to convert to his own use and embezzle the assets of the company, including the proceeds of the stock sold.

[1] There is no merit in the complaints of the rulings of the court during the impaneling of the jury. As happens at times, counsel succeeded in confusing jurors by questions they did not fully comprehend, but upon explanations by the court and their answers to further questions they showed themselves fully qualified. Counsel contended for a right to ask in his own way some questions which were calculated to induce a misunderstanding. They were rightly excluded by the court, with an explanation and permission to frame other questions accordingly. The discretion of the court in such cases was far from being exceeded.

[2-5] No error occurred in the admission of evidence nor as regards instructions to the jury. The four letters of Harrison & Norment were properly received, though the two to the loan company were quite unimportant in themselves. There was sufficient evidence that the letters were mailed and were received. The mailing of letters may be shown by evidence of the custom and course of men's private offices and business. Knickerbocker Life Ins. Co. v. Pendleton, 115 U. S. 339, 345, 6 Sup. Ct. 74, 29 L. Ed. 432. The mailing of letters postage prepaid raises a presumption of their receipt by the addressee. Kimberly v. Arms, 129 U. S. 512, 9 Sup. Ct. 355, 32 L. Ed. 764. The business of the accused and the size of the city in which he conducted it admit of the presumption, without the addition of his street num-

ber to the address. Besides, there was other proof that he received them. Proved copies of letters sent to an accused may be admitted in evidence, without otherwise accounting for the originals. Trent v. United States, —— C. C. A. ——, 228 Fed. 648; McKnight v. United States, 61 C. C. A. 112, 122 Fed. 926. The letters referred to were written by stockholders of the Loan Company while the scheme of the accused was in progress. They sought information regarding the affairs of their company to which they were entitled and they were a part of a course of correspondence in which the accused and the company participated. See Rumble v. United States, 75 C. C. A. 30, 143 Fed. 772.

[6] Complaint is also made of the testimony of a stenographer in the office of the Loan Company tending to connect the accused with the letters set forth in the indictment. She was asked what certain typewritten initials on the letters "signified and showed," and she answered that they "signified and showed" who dictated them and who took the dictation and transcribed them. There is no merit in the complaint. The phrase employed in the question and answer simply meant what the initials on the letters indicated according to the business practice in the office. Of course the testimony was not conclusive as to the authorship of the letters but it was relevant, and with other facts and circumstances constituted convincing proof upon the subject. There are other complaints as to the evidence but none more substantial than the above. The relevancy of the evidence upon which its admissibility depends is distinct from its probative effect. Moffatt v. United States, 232 Fed. 522, —— C. C. A. —— (decided at the December term).

[7] An instruction was requested that the rules by which the testimony of accomplices is tested should be applied to the testimony of certain witnesses. It was refused. Had the instruction been given as requested it would not have informed the jury what the rules were and it was not the duty of the court to put it in shape. Exception was taken to a passage in the general charge explaining the fiduciary relation of directors of a corporation towards the stockholders. The point of the exception was that a constructive as well as an active fraud might have been inferred by the jury; but the charge in its entirety left no doubt of the correct meaning in that particular.

[8, 9] Finally, it is urged that a motion for a directed verdict of acquittal should have been granted. We think, however, the verdict was supported by substantial evidence. The fact that the Loan Company was lawfully organized as a corporation and its chartered purpose a legitimate business did not prevent it being made the vehicle of a scheme to defraud. Miller v. United States, 66 C. C. A. 399, 133 Fed. 337; Lemon v. United States, 90 C. C. A. 617, 164 Fed. 953. It is clear beyond doubt that in the end the accused succeeded in perpetrating a swindle upon those he induced to buy shares of stock. The company was stripped of its business and assets, its records were removed to another state, and the stockholders were denied information of its affairs. Gross dishonesty is scarcely denied, but it is contended that this result occurred some two years after the company was organized, and that there was no evidence of a fraudulent intent

at the times the mails were used as specified in the indictment. Of course, if this were so, the offense would be only against the laws of the state. We think, however, that in the facts and circumstances surrounding the organization of the company, and in the conduct of the accused which soon developed and progressively continued, there was substantial evidence that, when he organized the company, sold the stock, and used the mails, he had in view the object he afterwards consummated—the defrauding of the company and its stockholders. The significant items of evidence need not be recited. Some of them were apparently innocent when regarded by themselves, as counsel argues them, but in their natural relations to a larger connected transaction they assume a different color.

The sentence is affirmed.